The next case for today is 2017-50341 Huckaba v. Ref-Chem. You may proceed. Thank you, Your Honors. My name is Alan Strota. I represent Kimberly Huckaba. As we know, September of 2016, Ms. Huckaba was hired by Ref-Chem at the time during the hiring process. She signed, among other things, a paper, a purported agreement that required the parties to arbitrate any disputes that they had between them. She signed it. Ref-Chem did not. Thus, we're presented with the central issue in this case, whether in the absence of Ref-Chem's signature on a stand-alone agreement, that this contract or agreement is enforceable by Ref-Chem. Now, again, the central question, of course, is whether it's enforceable without Ref-Chem's signature. At the outset, I think we need to look at the Court's opinion. The Court appears to me to apply a presumption that that agreement is prima facie enforceable, and the reason that is important is because that reflects on the burden of proof. Is it supposed to be on the burden of the other party to prove that there's a valid arbitration agreement? Yes, Your Honor, at the outset. And, of course, as we know, once the Court finds and is correct in finding that there is a valid arbitration agreement, then whether issues are to be included in that arbitration, there is a presumption that all the issues may be arbitrated. Now, I believe that Texas law, of course, applies in federal courts as to decide what is a valid agreement. Now, there's several cases that I think were important, and they're in my briefs, and I'm not going to get into any great detail on them, but there are several circumstances that the cases show that the party, the intent of the parties is what matters. Is there a valid agreement without the signature of both parties? Texas cases seem to look at the agreement. There's cases that I've cited where the signature block is relevant. There's cases that say where the agreement has a provision that it can only be modified in writing. That is persuasive to show that the parties intended that both parties sign it. And the third element I think that is even more important as here is that the agreement has a provision that specifically states how the parties assent to this agreement. By signing this agreement, the parties give up the right to sue each other. I believe that should be dispositive. Any other method of assenting to agreement to arbitrate apparent on the face of the contract other than by saying, by signing? That's not necessarily an unfriendly question. No, no, no, no, I understand. Is there any other manifestation on that in the body of the text of the document? Our particular document? Yes. Is there any? Manifestation that it could come into effect apart from the explicit requirement to sign. Not that I can say. The, again, the agreement, and Refkin has argued that Huckabee, I mean, that Heilbert applies because she continued to work after they gave her unequivocal notice. Well, they didn't. This is an entirely different factual situation. Heilbert applies, the Heilbert principle, the Hathaway, applies where a person works under a certain agreement with the employer. It could be at will. But anyway, they're given notice that by coming to work in no uncertain terms, if they come to work, they are agreeing to this new arbitration policy. The district court didn't find that it was Heilbert that was controlling, did it? No, it didn't. The district court did not rely on Heilbert. It made some noises about, not noises, it talked about her continuing to work or going to work for him, but it did not specifically say that Heilbert in principle applied. Well, the district court did discuss the fact that she showed up for work. Yes. In the event that she wanted to be bound or that she intended to be bound by the fact that she showed up for work. Why does that not indicate that she was bound, that she went to work? Texas law, you're allowed to set the conditions of assent and agreement on any kind of contract. And they did here. The way you agree on this contract is by signing the agreement, not by showing up to work. There is nothing in this agreement that they said, well, if you show up for work, despite not signing it, despite us not signing it, you're agreeing to this term. That provision we have, that agreement we have, the subject agreement, did not have any language to that effect. So they, REFCAM, who presented this agreement, presented the way that she was going to be bound and the way they were going to be bound by the agreement, and that is by signing the agreement. Could she have gone to work apart from the agreement? If she had not signed it? Did they say she's banned from being on the premises if she didn't sign until such point as she signed or something like that? Did they do anything? Was her actual showing up and being employed in any way limited by whether or not she had signed the agreement? I don't believe it is. There's just no arbitration agreement that's valid because they didn't sign it. She didn't show up to work. It's not inconsistent. She did work and they paid her. That's correct. You're saying they represented that they needed to sign it, that REFCAM needed to sign it? Yes, it's in the agreement. By signing this agreement, the parties— Where does it say that? It says it on— I mean, I'm looking at it. I'm just trying to see. It's signed. It's the next to last substantive paragraph. All right. Employee acknowledges. And the third sentence, by signing this agreement, the parties are giving up any right they may have to sue each other. All right. So it's our position that they specify the means of being banned and accepting. So do you give any—attach any significance to—I think it's in the very first sentence where they say the organization referred to above, or employer, and the employee whose signature is affixed here, too. Is there any significance in that phrase? Because they don't mention at all in that phrase anything about the employer's signature. No, they don't. All right. That's not significant. I don't believe so. All right. All right. Because it doesn't say the employee by signing the agreement. It says the parties. It says the parties. Okay. Did you have anything more? Yes, Your Honor. I—again, I just wanted to reiterate that I think the district court labored under the wrong assumption about what it could presume, and I think also that Rethkamp basically relies entirely and distinguishes the cases I cited on the principle of Huckabuck, which just is a different factual scenario. This is a new hire, and it's a standalone contract, which must be supported by valid consideration on both sides. And in Texas, of course, just hiring it, and that will employ, is not that consideration. It's got to be a mutually enforceable obligation to arbitrate. And on this one, Rethkamp didn't sign it. It doesn't meet the requisites of the contract. Thank you. We have your argument, and you just have time for a vote. Good morning. I'm pleased with the court. My name is Jose Gonzalez, representing Rethkamp. I think before I get started, it's important to recognize the things that aren't in dispute in this case. I mean, there's no dispute that Ms. Huckabuck received the agreement. She read it, she understood it, and she signed it. There's also no dispute that once she was aware that Rethkamp wanted to arbitrate disputes with her, she continued working. There's also no dispute that Rethkamp agreed to arbitrate its disputes with Ms. Huckabuck. It did that in the agreement itself, which says that Rethkamp agrees to do exactly that, and we submitted a declaration to the district court in which the HR director stated that, pursuant to that agreement, Rethkamp agreed to arbitrate its disputes with Ms. Huckabuck. How did Rethkamp do that in the agreement itself if it didn't sign it? Well, Your Honor, what I look at is in the first paragraph, about midway down, it says, in consideration of these many benefits, and then it goes on, and as one of those, it says, in consideration in the continuation of the employment relationship, dot, dot, dot, the parties hereto mutually agree that this document shall govern the resolution of all claims and disputes between them. And then it says, by signing the agreement, the parties are giving up any right they have to sue each other. That's where the arbitration provision is, and it says, by signing, and then it says, the parties. That's correct, Judge. And what that means is that if the parties sign it, they're agreeing to arbitrate. But to say they did not sign and therefore they did not agree to arbitrate, as we mentioned in our brief, that's the logical fallacy of denying the antecedent. The conclusion doesn't follow because the parties can agree to arbitrate in other ways. How do we know that? Because the contract is what specifies the way in which the parties express their agreement. If the contract said, by signing this agreement or showing up for work and accessing a paycheck or doing three jumping jacks, if it said all that, then it would manifest other ways. How do we know that other ways were contemplated and manifest by the parties' agreement if it's not in the agreement itself? Well, I think it is in the agreement because it says that in the continuation of the employment relationship, the parties are agreeing to arbitrate disputes between themselves. So by continuing to show up to work, she is agreeing to arbitrate disputes, and by continuing to employ her, we are also agreeing to arbitrate disputes. That is the alternative way of accepting this arbitration agreement. But it says the parties here, too, mutually agree, and there's no party here, too. It says the parties here, too, mutually agree, and being here, too, would be signing the party here that signed. And I think it's the first sentence that Judge Graves mentioned that identifies who the parties are. It's the organization referred to above, which is REFCAM, and the employee whose signature is affixed below, the employee. Those are the two parties here, too. But it says the parties here, too, and then it refers to the parties signing, not just one person signing. Right. But I'm saying that that is one method. By signing, if REFCAM had signed, I'd say, okay, that's one way REFCAM could have manifested its assent to arbitrate. The second is by continuing the employment relationship, that is the alternative method that the parties can manifest their assent to arbitrate disputes between them, and that's what REFCAM did. It continued to employ Ms. Huckabee after she began her employment. Because the contract says that in consideration of the employment relationship, the parties mutually agree that this document shall govern the resolution of all claims and disputes between them. So by continuing the employment relationship, that's how it's manifesting its assent to this agreement. That's the alternative way to do it. The fact that they didn't sign it means that their signature can't be used to show that they agreed, but the continuation of the employment relationship is the way that they did that. And that's Halliburton, because in Halliburton, under Texas law, to form a contract, all the employer has to do is notify the employee that it's changing the terms and conditions of employment, and here that's what REFCAM did. It rolled out the arbitration agreement and said, from here on out, we're going to arbitrate disputes between each other, and Halliburton says, as long as the employee shows up for work the next day with notice of that, they've agreed to the arbitration provision, and that's what occurred here, and that's what the district court found. In Halliburton, they did not manifest it, though, by having to sign a document, and Halliburton isn't a new hire, and there are a whole bunch of – what do you say to all of that, that Halliburton's really different? Well, in terms of the new hire, I think that's a distinction without a difference, because even if it's a new hire, what they're saying is when you start your employment, these are the rules you're going to follow, and in this case, it was you're going to arbitrate disputes with us. By signing the part, go ahead. No, and I get the argument, and there's certainly no dispute that she signed it, but I think our position is that REFCAM showed its assent to that agreement just by continuing to hire her. I mean, I guess the problem with that argument is they're the ones who presented the dispute resolution agreement, REFCAM is. She didn't come in and say I'm only going to work here if we can agree to arbitrate. They said if you want to work here, you've got to agree to arbitrate. So now you're saying that their continued employment of her is some evidence that they assented to the agreement. I guess it helps and it hurts, because I don't know that that's evidence that they continued. They're the ones who said either you sign this or we don't have a deal. So to say that their continued employment of her is some evidence that they assented to the agreement, but on the other hand, I think it's clearly evidence that they're the ones who wanted the agreement. They presented the agreement, so their intent was to arbitrate all disputes. They presented the arbitration agreement, and then she agreed to it. So arguably, that ought to be the end of the discussion. They're the ones who wanted it, and then she signed it, so she agreed to what they wanted. We have a deal. Right, and that's how I see it, is to say, because the parties have to show, the parties can agree that we need a signature before the contract can become effective. And I take those facts to make that that's unlikely. It is unlikely that REFCAM would institute an arbitration provision, roll it out to its employees, have everyone sign it, keep it in their personnel file, file a motion to compel, and put in a declaration that says we agree to arbitrate. But then to say that REFCAM somehow had to sign it first for it to be effective, I mean, it's unreasonable to assume that that's what they wanted. And I'd also point out that under the FAA, signatures aren't required. I mean, it's undisputed that under the FAA, signatures are not required in order to enforce the arbitration. But they chose the method. They didn't have to choose this method, but they chose this method. And they may not have intended to do it. Maybe they just forgot. But just forgetting makes it not valid if the signature is required. And they're the ones who chose the method that required a signature. And, Judge, not to belabor the point, but I just disagree that they intended to have the signature in order for it to be enforceable. So what do you say with this, by signing the agreement, the parties are giving up any right to have a jury trial? What I'm saying to that is if they did sign it, that's one way of manifesting the assent. But the other way is if they continue to employ her and she showed up to work after they rolled it out, that that constitutes their acceptance of the agreement. Do you agree that it's your burden to show that there was the intent to arbitrate? That you bear the burden of proving that there's a valid agreement to arbitrate at all times? Yes, ma'am. Do you agree that the district court didn't uniformly apply that burden to you, your client? I do disagree with that. Oh, that he put the burden to show that there was an arbitration? He shifted the burden somehow in his analysis. I do not believe that he did. I think we had the burden and the district court's opinion shows that we, in fact, had the burden to show that there was a contract. I think once there was a contract, then he took that step saying that there's a liberal policy in favor. But there isn't a contract. That's begging the question. No, I'm saying in the second part of his opinion, once he established there was a contract, that's when he did apply that. But at the initial stage of establishing there was a contract, I do not believe that he put the burden on Ms. Huckabee to show that there was not a contract. Okay. And, Judge, I would point out that the district court, in fact, found that the parties agreed that the continued employment constitutes acceptance by both the plaintiff and the defendant. So, in fact, the district court, I think, was using the same analysis that by showing up for work the next day, she agreed that she was going to agree to arbitrate disputes. And I'd also point out that since this is governed by Texas law, to show that signatures are a conditioned precedent to enforcing the agreement, the Texas courts have held that in order to show that intent, it has to be clearly and explicitly outlined in the agreement. And back to your point, Judge Elrod, I'm going to keep trying because I've got ten minutes to do it. Well, you don't need me. I mean, you don't need me. Maybe. I don't know. But since I haven't raised this point, it has to be clear. The Texas Court of Appeals stated in First Light v. Loya that it's got to be clear and explicit that they intended for signatures to be a conditioned precedent to the enforcement of the agreement. And I don't think there's any language that says that it's clearly and explicitly required that the parties sign this. And I get there's a signature block, but the courts have said that that alone is not sufficient. It's not just a signature block, though. It's text that refers to that signature block specifically as being the overt manifestation of the agreement to arbitrate. But what it does not say is it does not say that is the only way that the parties can ascend to their agreement. It says if they sign it, then they agree. But to say if you don't sign, you don't agree doesn't follow. I mean, it just does not because it's like saying if you have the flu, you're sick. To say I don't have the flu, therefore I'm not sick, we know that's not true. It doesn't logically follow because you can be sick some other way, right? There's other conditions that you can have. Yeah, but they should be manifest in the contract. Right, and it does. It says in consideration of the continuation of the employment relationship. I don't want to repeat them, but that's the argument that it is, Judge, or that we're sticking with. And I would point out also that in that paragraph of by signing this agreement the parties are giving up, I would point out that that paragraph appears directed to the employee. It starts off saying the employee acknowledges that she's reviewed the agreement. This is a legal document, and any questions should be discussed with legal counsel of the employee's choice. And then the very next sentence after that is by signing this agreement, the parties. So it's more directed towards the employee, as is the whole agreement. As you can tell from the first sentence, that doesn't mention the organization that signs below, it just refers to REFCON because it's REFCON. You want to arbitrate, right? Yes. All right. What if you didn't want to arbitrate? How would it be different with this agreement? What would your argument be? We didn't sign it. We're out. I'm not sure we could make that argument if I'm trying to get out of this. You're going to put this thing in the drawer unsigned, and, you know, we'll wait and see. Probably we're going to want to arbitrate, but if we don't want to arbitrate, we didn't sign it. So that's that. It gives us a choice here. It doesn't, Judge, but the arguments would just be switched. Ms. Huckaboe would be arguing, assuming she wanted to arbitrate, that we did agree because we put out this, we rolled it out to the employees, we said in the agreement that we were going to arbitrate, and we kept it in the personnel file, and we drafted it. All those things would show, and especially the fact that it says in continuation. You'd lose. Okay. Correct. The very way that you kept your options open, so to speak, shows that there wasn't an agreement. Can you distinguish the Bunzel case, please? Sure. Well, the Bunzel case is different because that agreement did not have any Halliburton-type language in it saying that in the continuation, or by continuing to be employed, you can accept it. Bunzel only had a signature block and a provision stating that in order to change this agreement, it's got to be signed and in writing, and the court said that is going to be some evidence. The agreement did say the employees desire to be employed and to continue employment. It did say that in Bunzel. In Bunzel? Mm-hmm. Your Honor. At 205. But go ahead. That's your distinction. Do you have any other distinction of Bunzel? That was my first one. The second one is that that was a mandamus proceeding, and so the court of appeals isn't looking at it de novo. What they were looking at was whether the district court abused its discretion in ruling as it did, and what the court of appeals said in the mandamus proceeding was that there was conflicting evidence as to whether or not there was an agreement to arbitrate, and the court said the district court was within its discretion to find that there was not an agreement to arbitrate, which suggests to me, I mean, obviously I can't speak for the court, but it suggests to me that had the district court found the other way, that the court of appeals could have said that the district court was also within its discretion. And here, on the flip side, the district court did find there was sufficient evidence of an agreement to arbitrate. But those are the two distinctions to Bunzel, Your Honor. Thank you. And I would also ask the court that in First Light v. Loya, that one had even, I think, more compelling language that a signature was required, because in First Light v. Loya, they had Halliburton language saying that by continuing to be employed, you've accepted, but it also said immediately after that that the employee must sign an acknowledgement agreeing to arbitration and agreed to the provisions. It said they must sign. I mean, to me, that's more evidence that a signature was required before it became enforceable. And what the court of appeals said was, well, look, that is in fact what it says, but we've got to harmonize all the provisions in the contract. And the contract says by continuing to be employed, you've accepted and that you must sign. And the court of appeals said, well, we're going to harmonize that by saying that must sign, because the employee did not sign in that case. They said we're going to harmonize it by saying that signing it was just one alternative method of accepting arbitration and the other was continuing the employment relationship. Right, but that agreement explicitly said continuing employment constitutes acceptance, which this agreement doesn't say. And I disagree for all the reasons I've stated before, Judge, but, yes, that is correct. That agreement in Loya did, in fact, say that. And, Your Honor, again, it's got to be clear and explicit that signatures are a conditioned precedent. As I mentioned earlier, REFCAM did everything to manifest its dissent to this agreement, including the declaration it submitted at the court below saying that they agreed. They rolled out this agreement to their employees and continued to employ Ms. Huckabee afterwards. Unless the court has any other questions, I just ask that the court affirm the district court below in compelling arbitration. Thank you. We have your argument. Your Honor, of course, Ms. Huckabee also signed a declaration saying, quite reasonably assuming if the agreement says by signing this we're both bound, she expected that they had to both sign the agreement. And she signed a declaration to that effect. But the important thing here is they've hung all their, they put all their marbles, all their eggs in one basket. I'll find some metaphor here. Eggs in one basket talking about Halliburton and the fact that under Halliburton, the employee accepted the agreement by showing up for work after the changes. If you look at our agreement, that is not what it says. It's a recitation of consideration. The continued employment is consideration. It's not, doesn't say anything about accepting the agreement by this. It says, in consideration of these many benefits, the mutual, by the way, it says mutual agreement of both parties to the binding arbitration provisions, the continuation of employment relationship and other consideration. It's a recitation of consideration. It's absolutely not a means of acceptance. Their case falls apart under the, even if Halliburton were applicable. This is not what happened. The contract specifies how it's supposed to be accepted by both parties. Ms. Kimberly signed it. RAF Kim didn't. There was no deal. It wasn't mutual. There's no mutual obligation to mediate. And to answer your question, Judge, if, yes, if she just had a piece of paper and said, okay, you're going to work for us and you agree to these provisions, nobody signs, nobody does anything, just hands you the paper, this is our arbitration provision, and they can prove it, of course, this is our arbitration provision, then the ballgame is over. But that's not what happened here. They specified the means of acceptance, and they reserved the right not to be bound if they didn't want to because they didn't sign it. They could always come back in here and say, wait a minute, I didn't sign that. We decided we didn't want to do that after all. So we didn't sign it. So we're not bound by arbitration provision, we're just suing it. They certainly could argue that. Again, what caused me, and again, he recited that the paragraph that contains the provision that acceptance is by signing the agreement, it was directed to the employee. Well, it was maybe, but she reasonably relied on the fact that nobody's bound if both parties don't sign it. The question I have, after looking at this, is I believe it's a matter of law. This agreement under Texas law required that both parties sign it. They may not like it, they may have forgot about it, but they didn't sign it. We believe it's a matter of law, but at least they didn't prove their case is a matter of law. I think before the judge can sign an order compelling arbitration, he's got to see that there's no issue here. There's, by certain, there's, at the very least, there's an issue. His order compelling dismissing the case and compelling arbitration just was unwarranted under the facts and the law, and we request the court to reverse and send it back for trial. Thank you. Thank you. We have your argument. This case is submitted. We call the next case for today, Center for Securities, Inc. versus Benefuel, Inc.